**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Garduno's of Arizona, LLC, an Arizona limited liability company,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Tortilla, Inc., a New Mexico corporation doing business as Garduno's of Mexico,<br><br>　　　　　　Defendant. | No. CV08-1090-PHX-DGC<br><br>**ORDER AND PRELIMINARY INJUNCTION** |

Plaintiff Garduno's of Arizona, LLC, operates three restaurants in Maricopa County, Arizona, using the "Garduno's" name. Defendant Tortilla, Inc., a New Mexico corporation, owns the rights to the Garduno's name and has licensed them to Plaintiff. In recent months, Defendant has taken the position that Plaintiff has breached the terms of the license agreement by failing to pay royalties owed to Defendant. Plaintiff has responded by filing this lawsuit, alleging that Defendant has engaged in various wrongs and should be enjoined from terminating Plaintiff's right to use the Garduno's name.

Plaintiff has filed an Application for Preliminary Injunction (Dkt. #14) that asks the Court to prevent Defendant from terminating the license. Defendant has filed an opposition to the application (Dkt. #22) and Plaintiff has filed a reply (Dkt. #23). Oral argument was held on September 12, 2008.

To prevail on its request for a preliminary injunction, Plaintiff "must demonstrate either (a) probable success on the merits combined with the possibility of irreparable injury

1 or (b) that [it] has raised serious questions going to the merits, and the balance of hardships
2 tips sharply in [its] favor." *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir.
3 2003). "[T]hese two alternatives represent extremes of a single continuum, rather than two
4 separate tests. Thus, the greater the relative hardship to the moving party, the less probability
5 of success must be shown." *Immigrant Assistant Project of Los Angeles County Fed'n of*
6 *Labor (AFLCIO) v. INS*, 306 F.3d 842, 873 (9th Cir. 2002).

7 **A.     Probability of Success on the Merits**.

8       Plaintiff contends that Defendant's attempt to terminate the license agreement is
9 invalid. Plaintiff asserts that it entered into the license agreement on January 1, 2003, and
10 agreed to pay a royalty fee of 1% of all sales at Plaintiff's Arizona stores. Defendant argues
11 that Plaintiff's purported license agreement is a fraud and that the parties in fact entered into
12 a different license agreement that called for the payment of 4% of sales. On May 29, 2008,
13 Defendant sent Plaintiff a letter (the "Notice Letter") demanding the payment of
14 $1,377,315.88 in delinquent fees and threatening to terminate Plaintiff's rights in the
15 Garduno's name if the fees were not paid. When Plaintiff did not make the payment,
16 Defendant sent Plaintiff a June 17, 2008 letter purporting to terminate the license agreement
17 and Plaintiff's right to use the Garduno's trademarks, trade name, and trade dress (the
18 "Termination Letter"). Plaintiff asks the Court to enter a preliminary injunction against this
19 attempted termination and to ensure that Plaintiff may continue using the Garduno's name
20 throughout the course of this litigation.

21       The parties sharply disagree on whether Plaintiff's or Defendant's version of the
22 license agreement is valid. Each party accuses the other of forgery. The parties do not
23 dispute, however, that they entered into an earlier agreement, in 1995, that licensed to
24 Plaintiff the right to use the Garduno's name. Their disagreement is over which version of
25 the license agreement replaced the 1995 contract.

26       The Court need not address the validity of Plaintiff's version of the license agreement
27 or the potential applicability of the 1995 contract, because the Court concludes that
28 Defendant has terminated no contract. As Defendant admits, its version of the license

- 2 -

agreement was never signed by the parties. Defendant has submitted affidavits from the attorney who allegedly drafted Defendant's version. The attorney avows that he worked to finalize an agreement acceptable to both Plaintiff and Defendant, repeatedly revising the agreement at Plaintiff's request, but that Plaintiff never signed the contract. Consistent with this avowal, Defendant's copy of the agreement submitted to the Court bears no signatures. Defendant's version of the license agreement, therefore, is not a binding contract.[1]

And yet when Defendant provided notice of Plaintiff's breach and Defendant's intent to terminate the license agreement if the breach was not cured, the Notice Letter was based on Defendant's version of the license agreement – the agreement that was never signed and required payment of 4% fees. The Termination Letter likewise was based on Defendant's version of the agreement. Because both the Notice Letter and Termination Letter were based on a contract that never was executed, they are invalid. They terminate a contract that does not exist. Defendant has never sent Plaintiff a notice or termination letter purporting to terminate Plaintiff's version of the license agreement or the parties' previous 1995 contract.

Because Defendant has sought only to terminate a contract that does not exist, and has never terminated any other contract between the parties, the Court concludes that Defendant has not terminated Plaintiff's right to use the Garduno's name. Plaintiff is therefore likely to prevail on the merits of its claim that the attempted termination is invalid.

**B.     Irreparable Harm**.

The parties disagree on whether Plaintiff will suffer irreparable harm if it loses the right to use the Garduno's name. Plaintiff notes that it has invested more than $10 million in developing the three Arizona restaurants that use this name, that the restaurants employ more than 300 people, that the restaurants repeatedly have been voted the best in Phoenix and have engaged in various other civic activities, and that Plaintiff therefore has accrued substantial good will in the business of the restaurants. Defendant responds by arguing that

---

[1] Defendant does not contend that the parties entered into an oral contract consistent with Defendant's version of the license agreement.

- 3 -

any injury could be remedied through monetary damages. Defendant also contends that it owns any good will in the Garduno's name.

The Court concludes that Plaintiff has established the possibility of irreparable injury. Plaintiff's restaurants have been in business for some years and have generated substantial customer good will. This good will is associated with Plaintiff's Arizona business operations and quality, not just with the Garduno's name owned by Defendant. Courts have recognized that "the loss of such good will could not readily be recouped and is mostly non-compensable. That, plus the more compelling prospect of the loss of livelihood on the part of [Plaintiff's] employees tips the balance on the issue of irreparable harm[.]" *American Standard, Inc. v. Meehan*, 517 F. Supp.2d 976, 989 (N.D. Ohio 2007).

**C.     Balance of Hardship**.

The Court also concludes that the balance of hardships tips sharply in Plaintiff's favor. Defendant's termination seeks to prevent Plaintiff from using the Garduno's name and to require Plaintiff to change its menu and decor. Such a termination would require Plaintiff to revamp the restaurants that have engendered substantial good will, restaurants in which Plaintiff has invested millions of dollars.

Defendant, on the other hand, will suffer little harm if the injunction is granted and Plaintiff is permitted to continue to use the Garduno's name. Although Defendant contends that its good will will be damaged because Plaintiff's business operations have been generating a variety of complaints, Defendant has failed to identify the sources of these complaints or describe the way in which they threaten to damage Defendant's business or good will.

The Court concludes that the hardship of forcing Plaintiff to close its restaurant substantially outweighs the hardship Defendant will incur if Plaintiff continues operating under the Garduno's name.

**D.     Conclusion**.

Plaintiff has established a probability of success on the merits and the prospect of irreparable harm. Plaintiff has also raised serious questions and demonstrated that the

- 4 -

balance of hardship tips sharply in its favor.  For both reasons, the Court concludes that Plaintiff is entitled to injunctive relief.

**IT IS ORDERED:**

1. Plaintiff's Application for Preliminary Injunction (Dkt. #14) is **granted**.

2. Defendant Tortilla, Inc., is hereby enjoined and restrained from terminating Plaintiff's right to use the Garduno's name and related intellectual property.  This injunction applies to Defendant and its officers, agents, servants, employees, attorneys and any other persons who are in active concert or participation with Defendant.  Fed. R. Civ. P. 65(d)(2).

3. Unless otherwise modified by the Court, this preliminary injunction shall remain in effect until the close of trial.

4. This preliminary injunction shall be effective upon Plaintiff posting security in the amount of $10,000.  Fed. R. Civ. P. 65(c).

DATED this 16th day of September, 2008.

_____
David G. Campbell
United States District Judge