**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Garduño's of Arizona, LLC, an Arizona limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>Tortilla, Inc., a New Mexico corporation doing business as Garduño's of Mexico,<br><br>    Defendant. | No. CV-08-1090-PHX-DGC<br><br>**ORDER** |

Defendant Tortilla, Inc. has filed a motion for a preliminary injunction. Dkt. #42. The Court requested supplemental briefing. The briefing is now complete. Dkt. ## 84, 86. Plaintiff Garduño's of Arizona, LLC has filed a motion for an order to show cause why a settlement agreement between the parties should not be enforced. Dkt. #65. That motion is fully briefed. Dkt. ## 85, 87. As part of its response to Garduño's motion, Tortilla has filed a motion to strike certain allegations and exhibits. Dkt. #85. Garduño's has responded to the motion to strike. Dkt. #87. The Court will deny all of the motions.

**I.    Background.**

This case arises out of a franchise relationship between Defendant Tortilla, a business that operates Mexican-themed restaurants under the trade names "Garduño's," "Garduño's of Mexico," "Garduño's of Santa Fe," and "Garduño's Chile Packing Company," and Plaintiff Garduño's of Arizona, LLC. Defendant Tortilla granted Plaintiff Garduño's a

1  license to use the Garduño's trademarks in exchange for the payment of royalties. A dispute
2  arose over the payment of royalties, among other things, and this case was filed.

3  The parties agree that the licensing agreement has been terminated. Tortilla's motion
4  for preliminary injunction argues that Garduño's continues to use Tortilla's trademarks.
5  Garduño's argues that this case was previously settled and Tortilla refuses to honor the
6  settlement agreement.

**II.    Motion for a preliminary injunction.**

To obtain a preliminary injunction, Tortilla must show that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Winter v. NRDC*, --- U.S. ---, 129 S. Ct. 365, 374 (2008); *see Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Tortilla does not ask the Court for an evidentiary hearing. The Court therefore will rule on the basis of the briefs and exhibits.

Tortilla seeks a preliminary injunction for trademark and trade dress infringement. Tortilla, however, has asserted no claim for such violations in this case and the time for amending pleadings has long since passed. Dkt. ##48, 83. The Court cannot grant a preliminary injunction on the basis of claims not asserted.

Even if Tortilla had asserted such claims, the Court would deny its request for injunctive relief. Tortilla argues that Garduño's continued to use Tortilla marks after the December 18, 2008 termination of the license agreement, giving rise to trademark infringement and unfair competition under the Lanham Act. Tortilla concedes that Garduño's changed the name of its restaurants from "Garduño's" to "Camarones" after the license agreement was terminated, but Tortilla claims that the Camarones logo is confusingly similar to the Garduño's logo.

Tortilla has failed to show a probability of success on the merits. Tortilla asserts that the Camarones logo is "strikingly similar" to its logo because both have distinctively oversized first and last letters. *Id.* at 6. The Court has viewed the samples of both logos and cannot conclude that the logos are "strikingly similar." While both have oversized first and

last letters, the Camarones logo uses a large chile and a shrimp to make up the "r" in the middle of the logo. *See* Dkt. ## 84-3 at 2, 84-4 at 4. The names also are different – "Camarones" is not strikingly similar to "Garduño's."

Tortilla also asserts that the Camarones restaurants continue to use the unique Garduño's design and decor in each of its restaurants. Dkt. #84 at 6. Tortilla asserts that its founder, David Garduño, carefully created this trade dress to make Garduño's restaurants unique and to create an inherently distinctive establishment. But Tortilla fails to describe what comprises this unique design and decor. Tortilla does not provide details about the color scheme, furnishings, or architecture that run through all Garduño's restaurants and creates a distinctive look. Instead, Tortilla appears to base its claim on the fact that the Camarones restaurants have not been redecorated since changing from Garduño's to Camarones. Tortilla has not provided any evidence, however, that Garduño's restaurants have a unique and common appearance. To the contrary, the pictures of the Camarones restaurants provided by the parties show three restaurants with distinctive, rather than common, decor. Dkt. ## 84-4, 84-6. Furthermore, Garduño's has provided the declaration of John Johnstone which states that he hired architects and designers for the restaurants and that Tortilla did not provide substantial input into the design of any of the restaurants. Dkt. ## 86 at 8; 86-4 at 6. Tortilla has failed to provide evidence that Camarones uses the same design and decor as its restaurants.

Finally, Tortilla asserts that the Camarones restaurants continue to use the same recipes, ingredients, and methods of food preparation. Dkt. #84 at 3, 9. The only evidence in support of this assertion is the declaration of Tortilla's Vice President, Jeannine Kosel, stating that on July 15, 2009, she contacted the Chandler location of Camarones and was told that "the food is the same" and that "there have not been many changes in the menu." Dkt. #84-2 at 4. Tortilla has not provided a typical "Garduño's" menu that the Court can compare to the menus at Camarones restaurants, nor has Tortilla described unique methods of food preparation at Garduño's restaurants. In contrast, Garduño's has provided a declaration by Cameron Eghlimi, a former manager of Garduño's and a principal of the

1 Camarones restaurants, stating that Camarones restaurants have their own recipe books and
2 plate guides and detailing thirty-two differences between the menu and cooking techniques
3 at Camarones and Garduño's restaurants. Dkt. #86-5. The Court cannot conclude that
4 Camarones and Garduño's restaurants have a confusingly similar menu.

5 Because Tortilla has never asserted the legal claims for which it seeks injunctive relief
6 and has failed to establish a probability of success on the merits, its request for a preliminary
7 injunction will be denied.

**III. Motion for order to show cause.**

The parties attended a mediation on December 5, 2008. The next day, the mediator faxed an unsigned "informal document" titled "Settlement Agreement" to the parties and stated in an attached letter: "If I have overlooked anything or if there is anything you would like to change, please let me know." Dkt. #85-2 at 2. The agreement was never signed.

Garduño's now seeks to have the settlement enforced by this Court. Dkt. #65. Tortilla argues that the settlement cannot be enforced for several reasons, including that the alleged agreement is protected by the mediation confidentiality privilege of A.R.S. § 12-2238, the agreement is missing material terms, and the settlement was not signed by the parties. Dkt. #85. Tortilla asserts that the Court must apply Arizona Rule of Civil Procedure 80(d) which states that "[n]o agreement or consent between parties or attorneys in any matter is binding if disputed, unless it is in writing, or made orally in open court, and entered in the minutes." *Id.* at 11-12 (citing *Lefevre v. Keaty*, 191 F.3d 596, 598 (5th Cir. 1999) (applying Texas Rule of Civil Procedure 11 to a diversity action to determine if a settlement was enforceable)). Tortilla further cites language from *Canyon Contracting Company v. Tohono O'Odham Housing Authority*, 837 P.2d 750, 754 (Ariz. Ct. App. 1992), stating that in order to meet the requirements of Rule 80(d) the writing must contain an expression of assent by the parties. Dkt. #85 at 11.

Garduño's does not dispute that the Court should apply Rule 80(d), but contends that the settlement agreement produced after the mediation sufficiently demonstrates the parties' assent to the terms of the agreement and therefore complies with the language *Canyon*

*Contracting*. The Court does not agree. Although the writing titled "Settlement Agreement" states that the parties agreed to settle their differences according to the terms of the document, it is undisputed both that the document was prepared by a third party – the mediator – and that the document was never signed by either party. Dkt. #85-2 at 3-5. The cover letter written by the mediator states that the draft agreement is an "informal document" and invites the parties to make additions or corrections. Nothing within the writing suggests that it was a final agreement assented to by the parties. Without any demonstration of the parties' assent to the terms of the agreement *within the writing*, the agreement does not meet the requirements of Rule 80(d) and *Canyon Contracting*. The Court therefore will deny Garduño's motion for an order to show cause as to why the settlement agreement should not be enforced.

**IV. Motion to strike.**

Tortilla filed a motion to strike the allegations in the motion regarding what was allegedly agreed to during the mediation as well as Exhibits 1 and 3-5. Dkt. #85 at 9. Because the Court has declined to enforce the settlement agreement, this motion will be denied as moot.

**IT IS ORDERED:**

1. Tortilla's motion for a preliminary injunction (Dkt. #42) is **denied**.
2. Garduño's motion for an order to show cause (Dkt. #65) is **denied**.
3. Tortilla's motion to strike (Dkt. #85) is **denied**.
4. The Court's Amended Case Management Order remains in effect. Dkt. #83. The Court intends to hold the parties to the schedule set forth in that order.

DATED this 8th day of September, 2009.

_____
David G. Campbell
United States District Judge